JjDREW, J.
E.K., a juvenile (DOB 5/9/83), appealed both his adjudication as a juvenile delinquent for committing simple arson at Dodson High School and the trial court’s disposition that the juvenile be held in custody of the Department of Public Safety and Corrections (DPSC) for four years. On appeal, the juvenile urged that the trial court erred in finding that the fire was caused by arson. Further, E.K. argued that there was insufficient evidence to support his adjudication, which E.K. asserted was based on the testimony of another person who admitted participating in the arson of the school. The adjudication of delinquency and the disposition that E.K. remain in custody of the DPSC for four years are affirmed.

TRIAL TESTIMONY AND EVIDENCE

The principal at Dodson High School, Charles Hammonds, testified that on December 13, 1998, the school was virtually destroyed by fire. The total loss to the facility and equipment was $1.2 million. On December 10, 1998, Hammonds had a confrontation with E.K. when Hammonds learned that E.K. had broken a school rule. As a result, Hammonds told E.K. that he would probably be transferred to the alternative school program in Winn Parish (WASP). E.K. told Hammonds that he would not go to the WASP program but would instead transfer to another high school in the area. Hammonds stated that E.K. transferred on December 14. School records produced by Ham-monds showed that E.K. transferred to another school as of December 15, 1998.
Kathy Saveli, a teacher at Dodson, heard E.K. on about December 11, 1998 talking and laughing with classmates about a building that had burned. E.K. stated that anything could burn down in Dodson because the fire truck never had any water in it. Brian Deal, a classmate of E.K., testified that he overheard E.K. say, in a joking manner to no one in particular in front of the school, that he was “going to torch this” or “to bring a torch” to the school. According to Deal, E.K. appeared | ?upset, kind of mad. Deal recalled this took place on Friday, December 11, but acknowledged it could have been the day before. Josh Womack, another pupil, recalled that on the Friday before the school burned, E.K. said that he was going to blow up the school. Finally, another student, Amber Carroway, heard E.K. proclaim, sometime during the week before the school burned down, that he was “tired of the school” and that he was going to “blaze it up.” Carroway believed that E.K. made these statements because he was tired of being suspended for smoking at school.
Lloyd Vines, the mayor of Dodson as well as the head of the volunteer fire department, was called out to the fire at approximately 6:30 p.m. on December 13, 1998. He was the first firefighter to arrive. Vines observed flames and smoke coming from the north side of the building, specifically from room #7 in which one window was broken out.
Trey Pharis, an arson investigator and canine handler with the Rapides Parish Fire District II, used his dog to investigate the scene of the fire. His dog, who is trained to find traces of accelerant at fire scenes, made a “hit” in room seven, where Vines initially saw the smoke and flames. The dog indicated that he smelled acceler-ant on the northeast wall and near the teacher’s desk. Pharis also noted burn patterns similar to that made with a flammable liquid near the wall. The dog also made a “hit” along the wall in the school office area. The dog was trained to alert on any type of flammable liquid. Pharis explained that the dog would alert at the presence of any flammable liquid such as a bottle of alcohol.
Glen Fontenot, a supervisor with the fire marshal’s office, was qualified as an expert in fire investigation origin and causes. During his investigation, Fontenot examined room # 7 which had the heaviest *664 damage and lowest level of burning. Fon-tenot testified that a fire burns up and out. He noted an unusual burn | ^pattern on the floor that led from the window out into the room and indicated flammable liquid accel-erant had been placed in that area. In addition to the unusual pattern, heavy char within the pattern and sharp demarcation also indicated accelerant had been placed there. Fontenot explained that heavy char on the floor and carpet burned away in some places while intact in other areas would not have been found in an accidental fire and indicated a flammable liquid accel-erant had been placed in the area. In response to questioning, Fontenot stated that the presence of a wire with arcing and beading in the attic would not be significant to the cause of the fire, because the fire itself could cause the copper to melt, bead and fuse at 1980 degrees. Fontenot stated normal accidental fire temperatures can exceed 2000 degrees. An arcing and beaded wire would be significant if found in proximity to the lowest level of burning. Fontenot concluded that the fire started at or near floor level in the northeast corner of room # 7. The fire spread through the rest of the wing, got up into the roof and extensively damaged the school. It was caused as a result of flammable liquid being introduced into room # 7 and the room intentionally being set on fire. Fontenot was unable to identify the accelerant used to start the fire despite sending samples of the flooring to a lab for testing. Fontenot explained that accelerants can be washed away by the large amounts of water used to put out the fire and can be burned away by the oven effect; i.e., fire contained in a block building results in higher temperatures which burn away the accelerant.
The last prosecution witness, Travis Chavez Mills, age 18, had previously pleaded guilty to simple arson for his participation in starting the fire. A plea bargain limited his incarceration to a four-year cap, subject to a pre-sentence investigation. Mills stated he received no other promise or special treatment in exchange for his testimony at E.K’s trial. Mills’ testimony was that E.K. and he |¿started the fire and that Travis Booker (Booker) was indirectly involved. On the afternoon of December 13, 1998, Mills and E.K. were at a barbeque at Booker’s home located across the street from Dodson School. E.K. mentioned that he wanted to burn the school down because he was upset that he had gotten into trouble. E.K. asked both Mills and Booker to accompany him. Mills testified that the three of them initially went across the street to the school and chose Mr. Leach’s room to start the fire in because no one would be able to see them. After Mills broke in the window with a stick brought from the Booker home, Mills and Booker ran away. Moments later Mills returned to the area outside the room. Mills and E.K. each poured gasoline into the broken window. E.K. had brought the gasoline in a plastic jug from his home located near the Booker residence. Mills tried to ignite the gasoline with a piece of paper but was unable to do so. E.K. lit another piece of paper, stuck it in the broken window and the fire caught. After the fire ignited, E.K. ran home and Mills ran back to the barbeque. Later E.K. came into the Booker home and stated that the school was on fire. Booker then took Mills home at Mills’ request. Mills identified room # 7 as Mr. Leach’s room where the fire was started. Mills admitted that he was told upon arrest that he could be sentenced to 30 years for this offense and when he heard this, he was willing to say anything to avoid being sentenced to that many years. He acknowledged many lies in earlier statements but maintained he was telling the truth at trial.
The defense began with the testimony of Travis Booker’s mother, Vivian Booker. She testified that E.K. arrived at her home at 2:30 p.m. She first saw Mills at her home about 45 minutes before she saw the fire while she and her daughter were out walking around the school. Mrs. Booker said she did not see Mills leave until after the fire started. She also denied having *665 seen E.K., Mills, hand Booker leave together. However, she admitted that she was inside of her home for a 5-10 minute period.
Vivian Booker’s daughter and Booker’s sister, Sonja Booker Phillips, resided with them on December 13, 1998. She saw E.K. and her brother at their home and she saw them walk to E.K.’s house. Phillips stated that she was inside of the house for most of the day and could not definitively testify that E.K. was always either in her yard or at his house. She stated she first saw Mills when he asked for a ride home.
Shannon D’Angelo Pikes stated he was Booker’s brother-in-law and that he arrived at the Booker home for the barbeque at approximately 2:30 p.m. He saw E.K. outside near the pit and Mills was not with the boys when he arrived. Pikes stated the only time he saw Mills was when Mills came to the Booker house after the fire had already been started to ask for a ride. Since he was inside, he did not know if Mills had been outside talking.
E.K.’s father testified that he was aware that his son had gotten into trouble on December 10, 1998, and that E.K. did not attend school on December 11, 1998. Instead, E.K. accompanied him to pick up a load of wood chips and haul them to DeR-idder, Louisiana. E.K’s father stated he was an employee of Ronnie Anderson. Additionally, E.K’s father testified that he saw E.K. numerous times on the day of the fire and that there was no gas or plastic gas can at their home prior to the fire.
E.K. also submitted the report of Vernon J. Wade, a project engineer for a company hired by Coregis Insurance Company to evaluate the school’s electrical system relative to fire causation. Wade was apparently subpoenaed by E.K’s attorney but failed to appear to testify at trial. While the parties stipulated that the report said what it said, they were unable to agree how to classify Wade’s expert | ^status. Finally, the State agreed to stipulate that Wade was an expert in the field his report addressed. Wade’s report concluded that based on the area of the origin of the fire as placed by another investigator, Wade’s fire scene investigation and his laboratory examination, the fire was “most likely caused by an electrical fault in the ceiling area.”
In rebuttal, the prosecution called one witness, Donna Higgs Hubbard, the office manager and secretary for Ronnie Anderson Trucking, the employer of E.K’s father in December 1998. She testified that she performed a records search and was unable to find any evidence that any loads had been taken by any employee of Ronnie Anderson Trucking to DeRidder, Louisiana, on December 11, 1998. Further, the records uncovered by Hubbard showed that E.K’s father did not haul any load anywhere on December 11,1998.

REASONS FOR JUDGMENT

In articulating his reasons, the trial judge and stated:
So, the critical question becomes who did it? To a certainty, based on his guilty plea and what he’s testified here to, Mr. Mills was a part of that. Now, we’ve got a great deal of testimony in this case. Much of it is self-serving. And that, in great part, is on the— comes from folks that sit on this stand who’ve got a son or brother or relative that remains to be tried on this case. And, I have assessed all the witnesses and their demeanor; tried to view it in the light based on any prior statements and what takes place here today. It really is a matter, looking at the totality of the evidence, if I accept the defense position, then we have a situation here where an individual is making statements regarding the school and the burning of it and somebody either picked up on them or through a strange twist of fate, just happens to burn the school down within two or three days of when he makes them. And I do accept *666 all of those statements completely. There’s no evidence here that — that they were not made. Those witnesses appear very trustworthy that (E.K.) indicated I’m going to torch it, burn it up or whatever — within a day he’s at another school. In reality, Mr. Mills, is really a very credible witness. I understand all that other. But I think he had every chance to waver and every reason to waver and he didn’t, except as to another individual that he didn’t do it. So I believe that (E.K.), and I find that (E.K.) had a part in this.
|7Based on these findings, the trial judge adjudicated E.K. a delinquent and found that the state had proven beyond a reasonable doubt that E.K. had committed simple arson. After receiving and reviewing a pre-dispositional report, the court placed E.K. in the custody of the Department of Public Safety and Corrections for a period of four (4) years.

DISCUSSION

In a juvenile delinquency proceeding, the state’s burden of proof is the same as in a criminal proceeding against an adulh — to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch. C. art. 888. In a juvenile case, the reviewing court is constitutionally compelled to review both the facts and the law. La. Const. Art. 5, Section 10(A) and (B). However, the reviewing court must recognize that the juvenile judge observed the conduct and demeanor of the witnesses and was in the best position to determine credibility and weigh the evidence. Therefore, this court grants great deference to the juvenile court’s factual findings and credibility determinations and assessment of the weight of particular testimony. State v. S.B., 31,264 (La.App.2d Cir.9/25/98), 719 So.2d 1121. Not only does the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard of review apply to juvenile delinquency adjudicatory hearings, but our state constitution mandates that we determine, after reviewing the record evidence, whether the juvenile court was clearly wrong in its fact-findings. State v. Redd, 445 So.2d 126 (La.App. 2d Cir.1984). See discussion, State in Interest of Cason, 438 So.2d 1130 (La.App. 2d Cir.1983).

Conflict in Expert Testimony

E.K. initially complained that the trial judge incorrectly determined that the school fire was caused by arson, the opinion of expert Glen Fontenot, rather than by faulty electrical wiring, the opinion contained in the report of expert Vernon 1 sWade. Fontenot provided his report, a list of credentials and qualifications and was available for cross-examination by the defendant. The trial court was able to observe Fontenot and evaluate his credibility during his trial testimony. Wade did not testify at the trial of this matter, so the trial court was unable to observe Wade and evaluate his credibility. Instead, his report was submitted, without a list of his qualifications or credentials. The prosecution was unable to question Wade concerning his motives in formulating the report and the methods used in coming to his conclusion that the fire was caused by a faulty electrical system.
Wade’s report indicated that Wade’s investigation was limited to an examination of the electrical system and appliances relative to fire causation and, based upon that study, found that the cause was “most likely” electrical fault in the ceiling area. In contrast, prosecution testimony of the arson investigator and the fire marshal explained how the burn patterns in room # 7 were inconsistent with an accidental fire and were consistent with the deliberate placement of an accelerant; how accelerant was found by the dog; why the dog alerted in other locations, why the laboratory tests failed to reveal the type of accelerant; and why the arcing on the wire examined by Wade might not be significant. When the trier of fact is confronted with a decision of which expert opinion to credit, a determination of the weight of *667 evidence is a question of fact which rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. State v. Horne, 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, unit denied, 96-2345 (La.2/21/97), 688 So.2d 521.
After a review of the entire record and granting great deference to the juvenile court’s factual findings and credibility determinations, we cannot say that 19the trial judge’s decision to accept Fontenot’s opinion rather than Wade’s as to the cause of the fire was clearly wrong. This assignment of error is without merit.

Insufficient Evidence to Convict

E.K’s other complaint was that the evidence was insufficient because it was based upon the testimony of an alleged accomplice, Travis Mills, without corroboration from any other fact presented at trial. Pursuant to Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir. 1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gradick, 29,231 (La.App.2d Cir.01/22/97), 687 So.2d 1071; State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
ImLa. R.S. 14:52 defines the crime of simple arson and provides in pertinent part:
A. Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in La. R.S. 14:51.
B. Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.
E.K’s assertion that there was no factual proof, other than the testimony of Travis Mills, to support his conviction is without merit. The trial court, in its reasons for judgment, accepted completely and found trustworthy the testimony of E.K.’s teacher and fellow students about E.K’s comments about burning the school. His statements occurred just days before the fire. In contrast, the trial court was clearly unimpressed with E.K.’s witnesses which included the relatives of himself and another person allegedly involved with the arson. Specifically, the trial court found that testimony to be self-serving. While the trial court distinctly considered the fact that Travis Mills admitted telling lies in prior statements to the police, the trial court found his trial testimony to be very credible. Mills’ testimony placed E.K. at the scene with gasoline and a piece of paper which E.K. lit and threw into the *668 school. Viewing all the facts shown by direct evidence and the inferences from the circumstantial evidence in the light most favorable to the prosecution, the trial court was not manifestly erroneous in its decision to adjudicate E.K. a delinquent for the arson of the Dodson High School. This assignment of error is without merit.

DECREE

The evidence, viewed in the light most favorable to the prosecution, is sufficient to support the delinquency adjudication beyond a reasonable doubt. There is no showing made that the juvenile court was clearly wrong or manifestly 11T erroneous in its factual findings. The delinquency adjudication and disposition are affirmed.