771 So.2d 807 (2000)
STATE of Louisiana, Plaintiff-Appellee,
v.
In the INTEREST OF W.T.B., Defendant-Appellant.
No. 34,269-JAC.
Court of Appeal of Louisiana, Second Circuit.
October 20, 2000.
*809 Bridgett E. Brown, Alexandria, W. Fred Smith, Winnfield, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Terry R. Reeves, District Attorney, James E. Lewis, Martin S. Sanders, III, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
WILLIAMS, Judge.
The juvenile, W.T.B. (DOB 1/18/83), was adjudicated delinquent based upon his conspiracy to commit simple arson, violations of La.Ch.C. art. 884, LSA-R.S. 14:52 and 14:26. Following his adjudication, the defendant was ordered committed to the custody of the Department of Public Safety and Corrections for a period of one year. On appeal, W.T.B. contends the juvenile court failed to weigh certain evidence and the evidence was insufficient to sustain a finding of guilt beyond a reasonable doubt. For the following reasons, we affirm.

FACTS
On December 13, 1998, a fire partially destroyed Dodson High School in Dodson, Louisiana, resulting in damages totaling 1.2 million dollars. Three youths, T.M.,[1] E.K.,[2] and the defendant, W.T.B., were arrested in connection with the crime.
*810 Earlier, on the day of the fire, W.T.B.'s family was having a barbeque at his mother's home located adjacent to Dodson High School. W.T.B., T.M., E.K. and members of W.T.B.'s family were present at the barbeque. During the course of the day, W.T.B., T.M. and E.K. discussed a plan to burn Dodson High School and eventually went to the school armed with gasoline and a hoe and set fire to the school.
W.T.B. testified that he never took part in a discussion to burn the school and he did not accompany the other two youths to the school to burn it. However, T.M.'s testimony contradicts W.T.B.'s claim. T.M. testified that E.K. initiated a conversation between the three youths concerning "burning down" the school and suggested that they go to the side of the building, break a window and ignite a fire using gasoline. T.M. further testified that, although he and W.T.B. were reluctant, all three boys went to the school. They were armed with gasoline that E.K. had retrieved from his home and a hoe that T.M. had taken from W.T.B.'s mother's home. T.M. testified that they went to room # 7 where he broke the window using the hoe. The loud noise from the glass breaking prompted the boys to turn and run. T.M. testified that as he turned to run, he saw W.T.B. running ahead of him. T.M. further testified that after running only a short distance, he and E.K. returned and set the fire. T.M. stated that W.T.B. did not return to the scene. According to T.M., after they successfully set the fire, he went back to W.T.B.'s house. T.M. found W.T.B. already there, and E.K. came back some time later.
The day after the fire, Glen Fontenot, a field supervisor for the State Fire Marshal's Office, conducted a preliminary investigation. He opined that the fire was caused by arson started by a flammable liquid accelerant placed in the area of origin, i.e., room # 7.
Coregis Insurance Company, the school's insurer, contacted LEED Corporation requesting an evaluation of the electrical system at the school. Vernon J. Wade, project engineer with LEED, investigated the scene on December 24, 1998. Based upon the area of origin as placed in an earlier investigation by Gary Brooks of Crawford Investigation Services, Wade examined the electrical system and appliances. Wade concluded that the cause of the fire was "most likely due to an electrical fault in the attic above the classroom." The parties stipulated to the introduction of this report into evidence.
At the conclusion of the presentation of evidence at the adjudication hearing, the juvenile court found that the state had met its burden of proving that W.T.B. conspired to commit simple arson. Accordingly, the juvenile court adjudicated W.T.B. a delinquent. W.T.B. now appeals.

DISCUSSION

Assignment of Error # 2
By his second assignment of error, W.T.B. contends the evidence presented by the prosecution was insufficient to prove his guilt beyond a reasonable doubt.
The record does not reflect that the juvenile filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. Nevertheless, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hudson v. *811 Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
On appeal, the standard of review for the sufficiency of evidence, as enunciated in Jackson v. Virginia, supra, i.e., whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt, is applicable to juvenile delinquency cases. La.Ch.C. art. 883; State in Interest of J.W., 597 So.2d 1056 (La.App. 2d Cir.1992); State in Interest of R.E.B., 26,468 (La. App.2d Cir.9/21/94), 643 So.2d 287.
Further, in a juvenile delinquency proceeding, an appellate court is constitutionally mandated to review the law and facts. LSA-Const. art. 5, § 10(B). Accordingly, under the civil law standard of appellate review, Rosell v. ESCO, 549 So.2d 840 (La.1989), an appellate court must review the record to determine whether the juvenile court was clearly wrong or manifestly erroneous in its factual findings. State in Interest of J.W., supra; State in Interest of R.E.B., supra.
LSA-R.S. 14:52 defines simple arson as "the intentional damaging by explosive substance or the setting fire to any property of another, without the consent of the owner." LSA-R.S. 14:26 defines criminal conspiracy as:
The agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
W.T.B. presents four arguments to support his sufficiency-of-the-evidence assignment of error. The juvenile initially argues that the state failed to prove that he had a motive to commit or conspire to commit arson. He next argues that the sole evidence of the state consists of the testimony of T.M., which is inconsistent and unreliable based upon his prior testimony at the delinquency hearing of E.K. W.T.B. also argues that the evidence does not show that there was an agreement among the three juveniles to burn the school. Finally, W.T.B. contends that, even if an agreement is shown, he did not commit any act in furtherance of the conspiracy.
Motive is not an element of the crime of simple arson or conspiracy to commit simple arson. LSA-R.S. 14:52 and 14:26. Motive evidence reveals the state of mind or emotion that influenced the defendant to desire the result of the charged crime. State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037. Specific intent is an essential element of conspiracy. State v. Ellis, 94-599 (La.App. 5th Cir. 5/30/95), 657 So.2d 341, writs denied, 95-2095 (La.12/8/95), 664 So.2d 421 and 95-1639 (La.1/5/96) 666 So.2d 300. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). The determination of specific criminal intent is a question of fact and may be inferred from circumstances and actions of the defendant. State v. Armant, 97-1256 (La.App. 5th Cir. 5/27/98), 719 So.2d 510, writs denied, 98-1884 (La.11/20/98), 729 So.2d 3 and 98-1909 (La.11/20/98), 729 So.2d 4.
In the instant case, T.M. testified that he and W.T.B. were reluctant about the idea of burning the school. Nevertheless, W.T.B. went to the school with T.M. and E.K. to accomplish the deed. W.T.B. was present when the school's window was broken. Viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient to support the inference *812 of W.T.B.'s specific intent to burn the school from the factual circumstances surrounding the offense and his actions. State v. Armant, supra.
W.T.B. further argues that T.M. is not credible based upon his testimony in the trial of E.K. The juvenile court's conclusions were based, in part, upon a finding that T.M.'s testimony was credible. Because a sufficiency of evidence review does not extend to credibility determinations, appellant's argument regarding T.M.'s credibility is without merit. LSA-Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
W.T.B. next argues that there was never an agreement between the three youths to burn the school. T.M. testified that there was never an agreement between himself and W.T.B. to set fire to the school, and to his knowledge, there was no agreement between W.T.B. and E.K. As stated above, T.M. testified that W.T.B. was reluctant to go through with the plan to burn the school, and W.T.B. stated that the idea was "crazy." Nevertheless, despite W.T.B.'s reluctance, the evidence indicates that he participated in the discussion regarding burning the school and actually went to the school along with the other youths to accomplish the deed. These circumstances indicate that W.T.B. gave his assent to the conspiracy. Proof of a conspiracy may be made with direct or circumstantial evidence. State v. Brown, 398 So.2d 1381 (La.1981).
The juvenile further contends that even if there was an agreement to burn down the school, he did nothing in furtherance of the conspiracy. An "overt act," as an element of conspiracy, need not be an unlawful act. It may be any act, however innocent in itself, accompanying or following the agreement, which is done in furtherance of its object. State v. Mayeaux, 570 So.2d 185 (La.App. 5th Cir.1990).
T.M. testified that after he broke the window, he and E.K. poured gasoline inside the building and ignited the fire. Although W.T.B. did not participate in the act of igniting the gasoline, LSA-R.S. 15:455 provides that each co-conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise. In State v. Lobato, 603 So.2d 739 (La.1992), the Louisiana Supreme Court stated:
The conspiracy is presumed to continue unless or until the defendant shows his withdrawal from or termination of the conspiracy. To prove withdrawal, a defendant must show affirmative actions made by him which are inconsistent with the object of the conspiracy. Such affirmative actions including making a clean breast through confession to the authorities as well as notification to the coconspirators of abandonment or withdrawal.
603 So.2d at 746 (citations omitted).
According to T.M., W.T.B. ran from the scene after the window was broken. Nevertheless, W.T.B. neither made a clean breast through confession of the extent of his involvement in the plan to authorities, nor notified his co-conspirators that he was abandoning or withdrawing from the plan.
We find that the evidence presented during trial, viewed in a light most favorable to the prosecution, was sufficient to sustain the juvenile's adjudication as a delinquent beyond reasonable doubt. The juvenile court was neither clearly wrong nor manifestly erroneous in its factual findings. W.T.B.'s contention that the evidence was insufficient to prove his guilt beyond a reasonable doubt is without merit.

Assignment of Error No. 1
W.T.B. contends the juvenile court failed to weigh and consider as evidence a report from the school's insurance company in which Vernon Wade concluded that the fire was caused by an electrical fault due to aged wiring. The juvenile attacks the reliability of the conclusions drawn by Fontenot of the State Fire Marshal's Office, and further contests the *813 court's apparent disregard of the scientific report of the insurance company insofar as it conflicted with Fontenot's conclusions regarding the presence of accelerants.
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise. LSA-C.E. art. 702. Trial judges are required to consider factors other than whether the purported expert's testimony is based on methodology subject to "general acceptance" in the scientific community, which allows the admission of some testimony even if the methodology is not "generally accepted." The scientific evidence, however, must be derived by scientific method. Daubert v. Merrell Dow Pharmaceutical, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993). The proponent of expert testimony cannot simply elicit the expert's conclusionary testimony, but must elaborate to some extent about the scientific methodology employed to verify the hypothesis. Clement v. Griffin, 634 So.2d 412 (La.App. 4th Cir.1994).
In the instant case, Fontenot was qualified by the court as an expert in the investigation of fire origin and causes. He had twenty-three years of training and experience working with fire-related issues. The juvenile court relied on the opinion of Fontenot who, after making an initial inspection of the scene, determined that the fire started in room # 7 near the window, as a result of an accelerant being placed on the floor in that area. According to Fontenot, his opinion was based upon the pattern of damage in that area and the reaction of the dogs used in the investigation that were trained to sniff the presence of accelerants. In addition to having the opportunity to review Fontenot's written report, the trial court was also able to observe Fontenot and evaluate his credibility during his trial testimony. To the contrary, in lieu of testimony from Wade regarding his opinion that the fire was of an electrical origin, the defense chose merely to introduce the report into evidence.
When the trier of fact is confronted with a decision of which expert opinion to credit, a determination of the weight of evidence is a question of fact which rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a conviction. State v. Horne, 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521; State v. Mickens, 31,737 (La.App.2d Cir.3/31/99), 731 So.2d 463. We cannot say that the juvenile court's decision to accept Fontenot's conclusions, which were corroborated by T.M.'s testimony, was clearly wrong. This assignment of error is without merit.

Error Patent
At the conclusion of the disposition hearing, the juvenile judge failed to give the juvenile notice of the time limit for filing a post-conviction relief application as required by LSA-C.Cr.P. art. 930.8. This is error patent. State in Interest of L.D.L., 97-1634 (La.App. 3d Cir.4/29/98), 714 So.2d 780. This defect has no bearing on the disposition and is not grounds to reverse the disposition or remand the case for another disposition hearing. See, State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992).
Accordingly, the juvenile court is directed to send appropriate written notice to W.T.B. within thirty days of the rendition of this opinion and to file proof of the juvenile's receipt of such notice in the record of the proceedings. State v. Mock, supra; State v. Smith, 600 So.2d 745 (La. App. 2d Cir.1992).

*814 CONCLUSION
For the foregoing reasons, W.T.B.'s adjudication of delinquency and disposition are affirmed.
AFFIRMED.
NOTES
[1] T.M. agreed to admit that he was a delinquent juvenile and testify against the other two juveniles in exchange for an agreed disposition of a commitment to the Department of Public Safety and Corrections for not more than four years.
[2] E.K. was adjudicated a delinquent juvenile and committed to the custody of the Department of Corrections for a period of four years. His adjudication and disposition were affirmed on appeal to this court. State In Interest of E.K., 34,063 (La.App.2d Cir.8/23/2000), 766 So.2d 661.