BROWN, Chief Judge.
|, In this delinquency proceeding, 13-year-old D.M.J. was charged with oral sexual battery occurring between the dates of January 1, 2007, and May 31, 2007. The victim was defendant’s ten-year-old stepbrother. Following an adjudication hearing, the trial court found that the state established guilt beyond a reasonable doubt and placed D.M.J. in the custody of the Office of Youth Development for a period of two years. D.M.J. appealed asserting that the evidence was insufficient and that the trial court erred in allowing the admission of a videotaped interview of the victim. Finding the evidence sufficient to convict and no trial error in the admission of the videotape, we affirm.

Applicable Law

When the state charges a juvenile with a delinquent act, it has the burden of proving each element of the offense beyond a reasonable doubt. La. Ch. C. art. 883. In juvenile delinquency proceedings an appellate court is constitutionally mandated to review both law and facts. La. Const. art. V, § 10(A) and (B). Accordingly, as in a civil law case, Rosell v. ESCO, 549 So.2d 840 (La.1989), the appellate court must review the record to determine if the juvenile court was clearly wrong or manifestly in error in its factual findings. State in the Interest of W.T.B., 34,269 (La.App. 2d Cir.10/20/00), 771 So.2d 807.
Louisiana Revised Statute 14:43.3(A) provides that oral sexual battery is the intentional touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or the touching of the anus or genitals of the offender by the victim using the mouth or tongue of |2the victim; and, when the victim is less than fifteen years old, is not the spouse of the offender, and the offender is at least three years older than the victim.

Discussion

Sufficiency of the Evidence

Defendant argues that the critical evidence of his guilt came from the testimony of the ten-year-old victim and the victim’s seven-year-old sister. D.M.J. argues that this testimony was unbelievable because of prior inconsistent statements and was contrary to facts developed by other witnesses. We note that the mother of these children married defendant’s father in November 2005 and that all of these parties resided in the same household.[1]
On July 11, 2007, the maternal grandmother of the victim contacted the Lincoln Parish Sheriffs Department claiming that her 13-year-old step-grandson (D.M.J.) had forced her ten-year-old grandson (T.H.) to perform oral sex upon him. She *415 asserted that she learned of the incident from the seven-year-old sister (C.H.) of the victim.
Once the initial complaint was filed, the victim and his sister were interviewed by Dr. Sally E. Thigpen, a psychologist and forensic interviewer. Dr. Thigpen first interviewed T.H. During his interview, T.H. stated that he was forced to touch defendant’s “bird” (genitals) and perform oral sex on him. T.H. said that the incident occurred when his mother was ^asleep and his stepfather had gone fishing. According to T.H., his sister was in the living room watching television when the incident occurred. T.H. stated that he was forced to perform oral sex on D.M.J. at least ten times. He indicated that this occurred from November 2006 through January 2007. T.H. recounted that defendant’s semen tasted like “salt water.” Finally, T.H. related that his sister was also forced to perform oral sex on defendant. At several points in the interview, T.H. expressed a desire to go back and play with the puppets or to leave, but Dr. Thigpen encouraged him to continue with the interview.
After the videotape was introduced, T.H. was called by defense counsel on cross-examination. T.H. testified that he did not like his stepfather because his grandmother told him not to. He also stated that he had never actually watched an adult movie, but on at least one occasion he heard the voice of a woman speaking from a movie being watched by D.M. J.
The victim’s mother testified. She stated that she had learned of T.H.’s allegations from her mother. Before learning of the incident, she said that T.H. complained that he did not want to be around defendant. She also stated that there were adult movies in the house and that she heard defendant watching a movie one time and that she made him turn the movie off. She knew of no instances where T.H. watched an adult movie.
During her interview with Dr. Thigpen, the seven-year-old sister stated that someone almost touched her private parts, but she didn’t remember the details of the incident. She also stated that no one ever asked |4her to touch his or her private parts. She said that defendant tried to touch T.H. inappropriately but was prevented from doing so because she told on him.
At trial, the seven-year-old sister of the victim testified that she actually saw T.H. performing oral sex on defendant. She said that she lied to Dr. Thigpen in the interview because she was confused. She also said that both defendant and the victim watched adult movies together.
Finally, the father of defendant (the victim’s stepfather), testified that he believed that the allegations by the victim stemmed from a plan by his mother-in-law (the victim’s grandmother). He also said that the victim watched adult videos and that he probably got the notion that semen tasted like “salt water” from one of the videotapes.
D.M.J. did not testify at the trial.
The trial court found that the state had established that D.M.J. was guilty of oral sexual battery beyond a reasonable doubt. In its Reasons for Judgment, the court stated:
The victim testified that he was forced to perform oral sex upon the juvenile defendant by the juvenile defendant without the victim’s consent. Testimony of the victim was impressive. The young man’s testimony was clear, concise, and unwavering. No apparent motive for falsifying his testimony was established. His out-of-court taped testimony was consistent in all respects with his in-court testimony. His testi *416 mony was not contradicted by any person at the hearing. Accordingly, the testimony of the victim is accepted by the Court as being a true and correct account.
The victim’s sister corroborated his testimony. Although she previously denied knowledge of the incident, the denials occurred before she was removed from the home by the State. It is likely that having been removed to a more secure and safe environment, she became willing to tell what she had witnessed. Again, it does not appear that she had any motive to falsify her testimony.
IsOur review of this record shows that the evidence was sufficient to convict D.M.J. of oral sexual battery. Both during his interview with Dr. Thigpen and at trial, the victim stated that defendant forced him to touch defendant’s genitals and to perform oral copulation. His sister testified at trial that she witnessed the illicit contact between D.M.J. and her brother. The mother’s testimony showed that the victim was approximately three years and six months younger than defendant.
There was argument concerning the time frame of the alleged illegal acts. The mother testified that the parties separated in August of 2006 and reconciled in February 2007. She also noted that during the separation that they visited and that defendant would be with her children on weekends. We do not find this testimony to show that the acts did not occur during the time frame set out in the charge, i.e., between January 1 and May 31, 2007.

Admissibility of Videotaped Interview

At trial, instead of having T.H. testify on the witness stand, the district attorney attempted to use T.H.’s videotaped interview with Dr. Thigpen as his direct examination of the victim. Defense counsel objected to the introduction of the videotape, arguing that it was not admissible under La. Ch. C. art. 826. Defendant counsel argued that Dr. Thigpen’s questions to T.H. were framed in such a way as to lead the child into stating that he had been abused by D.M.J. and further, that T.H. was prohibited from leaving the interview by Dr. Thigpen after requesting numerous times to do so. In particular, counsel objected to the following exchange in the interview:
| r,Dr. Thigpen: Has anybody touchfed] you in a place that you don’t [sic] what [sic] them to touch you?
T.H.: Um, nobody.
Dr. Thigpen: Nobody. Has anybody, excuse me, has anybody ever ask[ed] you to touch them in a place that you didn’t what [sic] to touch them, on a body part that you didn’t want to touch them? [defendant’s first name]? Can you tell me about that?
T.H.: I don’t want to.
Defense counsel argued that Dr. Thig-pen’s questions came from “left field” and that Dr. Thigpen did not have a basis to use the first name of the defendant when T.H. had not previously done so.
La. Ch. C. art. 326(A)(4) provides in pertinent part that:
(A) A videotape of the statements of a protected person who is alleged to be the victim of or witness to a crime may be offered in evidence for or against such crime. To render such a videotape competent evidence, all of the following must be satisfactorily proved:
(1) Such electronic recording was voluntarily made by the protected person.
(2) No relative of the protected person was present in the room in which the recording was made.
(3) No attorney for either party was present when the statement was made.
*417 (4) Such recording was not made of answers to questions calculated to lead the protected person to make any particular statement.
(5) Such recording is both visual and oral and is recorded on film or videotape or by other electronic means.
(6) Such recording is accurate, has not been altered, and reflects what the protected person said.
(7) The taking of the protected person’s statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, licensed professional counselor, or an authorized representative of the department.
(8) Every voice on the recording is identified.
(Emphasis added).
ChiIdren’s Code Article 326 was based on the documentary evidence rules prescribed in La. R.S. 15:440.4. Both Article 326(A)(4) and R.S. 15:440.4(A)(3) contain virtually identical provisions concerning the use of questions calculated to lead to a particular statement.[2] The Louisiana Supreme Court has held that the trial court has the discretion to relax such prohibitions in the case of an examination of young victims, State v. Abbott, 29,497 (La.App. 2d Cir.06/18/97), 697 So.2d 636, writ denied, 97-1929 (La.01/09/98), 705 So.2d 1097, citing State v. Carthan, 377 So.2d 308 (La.1979), or to elicit specific details from a young victim to clarify an earlier statement. State v. Roberts, 42,417 (La.App. 2d Cir.09/19/07), 966 So.2d 111.
The exchange objected to by defendant appears to be an attempt by Dr. Thigpen to clarify the victim’s statements. Leading up to the exchange in question, T.H. was unresponsive to many of the psychologist’s questions. Because of this, Dr. Thigpen frequently had to restate her questions and repeat statements to the victim that he had made. In the specific exchange objected to by defendant, Dr. Thigpen and T.H. had been discussing places on the body that were not appropriate for people to touch. Dr. Thigpen asked T.H. what places on his body various family members had touched including the victim’s mother, sister, aunt, cousin, and D.M.J. These family members in particular had been discussed earlier in the interview, and D.M.J. was not singled out. Consequently, Dr. Thigpen’s use of D.MJ.’s name was consistent with statements that had previously been made in the|ginterview and were used to clarify the victim’s earlier statement. Accordingly, the trial court did not abuse its discretion in allowing the leading question.
The claim that the victim’s statements were involuntary is not supported by the record. Although T.H. asked to stop the interview^ Dr. Thigpen encouraged him to continue by saying that the interview would be over soon and by asking him to continue a little longer. Dr. Thigpen’s actions seem to be a plausible interviewing tactic, especially with such a young victim, and is not something that would have placed T.H. under fear, duress, or intimidation. This assignment of error is without merit.

Conclusion

For the reasons set forth above, defendant’s adjudication of delinquency and disposition are affirmed.

. A child born of this marriage was five months old at the time of the trial. Defendant started living with his father in October 2006 after his mother was killed in an automobile accident.

. La. Ch. C. art. 326(A)(4) refers to "questions" while La. R.S. 15:440(3) refers to “interrogatories.”